Submitted on record and brief August 21, accused disbarred October 26, 1989

In re Complaint as to the Conduct of

# L. CHARLES PURVIS,
*Accused.*

(OSB 87-54, 87-98, 87-113; SC S35032)

781 P2d 850

Christopher R. Hardman, Assistant Disciplinary Counsel, Lake Oswego, filed the petition and opening brief for the Oregon State Bar.

No appearance by or for the accused.

PER CURIAM

## PER CURIAM

The Oregon State Bar initiated this proceeding against L. Charles Purvis by filing a formal complaint on July 26, 1988, alleging nine causes of complaint. The accused failed to file an answer to the complaint. A Trial Panel of the Disciplinary Board heard the matter on February 23, 1989. The accused did not appear at the hearing. On May 9, 1989, the Trial Panel issued its Opinion and Disposition, finding the accused guilty of the alleged violations set forth in every cause of complaint. The Trial Panel unanimously determined that the accused should be disbarred from the practice of law.

The record in this proceeding was filed with the State Court Administrator on May 24, 1989. The accused was given until July 14, 1989, to file a petition and opening brief, which he failed to do. Pursuant to Bar Rule 10.5(c), the Bar filed its Petition and Opening Brief, urging the court to adopt the Opinion and Disposition of the Trial Panel. Review in this court is *de novo*. ORS 9.536(3); BR 10.6. We agree with the Opinion and Disposition of the Trial Panel.

We find that there is clear and convincing evidence that the accused violated each of the standards of professional conduct alleged by the Bar and conclude that the accused's professional misconduct requires that he be disbarred from the practice of law.

## FACTS

The allegations supporting the charges in the complaint arise out of three separate cases, referred to as Donaldson, Hunnell, and McCallister.

### 1. *Donaldson*

On December 19, 1986, Michael W. Donaldson retained the accused to pursue a dissolution decree modification concerning visitation rights. He paid the accused $100. Donaldson contacted the accused on numerous occasions between January 5 and March 25, 1987, seeking information on the status of the proceedings. On the occasions that Donaldson was able to discuss the case with the accused, the accused represented that the "paperwork was in the mail." The accused advised Donaldson that he contacted Donaldson's ex-wife or her lawyer and was serving Donaldson with

the modification papers. When interviewed, Donaldson's ex-wife stated that the accused never contacted her and that she did not receive any dissolution decree modification documents. Donaldson never received a copy of any proposed modification to his dissolution decree or any correspondence from the accused. The accused did not file a motion to modify the decree of dissolution relative to child visitation.

On March 25, 1987, Donaldson requested his files and a refund of the unused portion of his retainer. Donaldson told the accused that he could keep $25 of the fee for the few services that were rendered, and that he would accept a $75 refund. The accused agreed to refund the money and advised Donaldson that he would mail both the files and the money. This was the last time Donaldson ever heard from the accused — Donaldson never received any of his money or files.

Donaldson filed a complaint with the Bar on April 7, 1987, alleging the above-stated misconduct. The Bar sent the accused a letter on April 13, 1987, enclosing Donaldson's complaint and requesting a response by May 4, 1987. The accused did not reply. The Bar referred this matter to the Clatsop/Columbia/Tillamook County Local Professional Responsibility Committee (LPRC) on May 12, 1987. The accused was notified by certified mail of the LPRC referral. "Chuck Purvis" signed the return receipt on May 13, 1987.

On May 18, 1987, an LPRC investigator sent the accused a letter requesting certain information and a response to Donaldson's complaint. The letter was received by the accused on May 27, 1987. The accused telephoned an LPRC investigator on June 2, 1987, and informed him that a "written response was in the mail." The accused, however, did not submit a response to the LPRC or Bar inquiries.

On July 26, 1988, a formal complaint was filed against the accused alleging violations of former DR 1-102(A)(4) (current DR 1-102(A)(3)) (misconduct); former DR 6-101(A)(3) (current DR 6-101(B)) (neglect); DR 9-101(B)(4) (return of client funds and property); DR 1-103(C) (disclosure); and ORS 9.527(4) and (6). (See appendix for text of statute and current disciplinary rules.) The accused was served with a notice to answer. The accused failed to answer, and the Trial Panel found the accused in default.

## 2. *Hunnell*

In the fall of 1985, Jonathan F. Hunnell consulted the accused concerning a property foreclosure. The accused advised Hunnell to file for bankruptcy. On April 25, 1986, Hunnell signed prepared bankruptcy papers and paid the accused the requested $65 filing fee. At that time, the accused told Hunnell that he would file the bankruptcy petition that very day. Thus, Hunnell believed that the accused filed his bankruptcy petition on the day he paid the filing fee. Between April and October of 1986, Hunnell did not receive any information from the accused regarding his bankruptcy, but he assumed that the accused was doing everything necessary.

In October 1986, a creditor informed Hunnell that his bankruptcy case had not been filed. Hunnell telephoned the accused, and the accused admitted that he had not filed the bankruptcy petition.

On December 15, 1986, Hunnell and his ex-wife, Toni Denfield, met with the accused to review and revise a draft of the bankruptcy petition. All agreed that Denfield's name would be included in the revised bankruptcy papers. The accused represented that as soon as the forms were completed, he would send them to Denfield for her signature. The accused did not prepare or file such documents.

Hunnell sent the accused a letter on July 10, 1987, demanding that the accused either refund the $65 filing fee and return the file he had provided or send proof that the matter had been prepared and filed. Hunnell never received a response from the accused, nor did he receive any money or property back. In the same letter, Hunnell notified the accused that he intended to file a complaint with the Bar.

On August 10, 1987, Hunnell filed a complaint with the Bar. On August 17, 1987, the Bar sent the accused a letter, enclosing the Hunnell complaint and requesting a response by September 7, 1987. On October 12, 1987, the Bar sent a certified letter to the accused informing him that he had responsibilities under DR 1-103(C), that his case had been referred out to the LPRC, and that he should cooperate with the LPRC investigation. This letter was returned to the Bar unclaimed. On October 29, 1987, an LPRC investigator sent the accused a letter requesting a response to the investigation, which was

received by the accused on October 30, 1987. The accused never responded to the Bar or the LPRC investigator in this matter.

On July 26, 1988, a formal complaint was filed against the accused alleging violations of former DR 1-102(A)(4) (current DR 1-102(A)(3)); former DR 6-101(A)(3) (current DR 6-101(B)); DR 9-101(B)(4); DR 1-103(C); and ORS 9.527(4) and (6). The accused was served with a notice to answer the complaint. The accused failed to answer, and the Trial Panel found the accused in default.

### 3. *McCallister*

On the morning of July 9, 1982, Jayne McCallister was injured in an automobile accident involving a 7-Up truck belonging to the Portland Bottling Company and a third party. That same afternoon, she retained the accused to represent her in a personal injury action. The accused had represented Ms. McCallister in the past, and they were also casual friends. At the outset of the case, the accused represented her at insurance company meetings and advised her concerning the types of documents to gather.

After approximately three months, however, it appeared to McCallister as if nothing was happening with her case. She repeatedly contacted the accused, inquiring as to the status of her case. Over the next two years, nothing was done on the case, although the accused consistently represented to McCallister that he was "working on it," that it was filed and he was awaiting a court date, and that it was definitely going to court. Three days before the statute of limitations expired, on July 6, 1984, the accused filed a complaint on behalf of McCallister. Service of the complaint on the parties was not completed until September 10, 1984. By then, the statute of limitations had expired. On January 30, 1986, the case was dismissed for lack of prosecution.

On April 17, 1986, McCallister hired another lawyer to represent her. He filed a complaint against the accused with the Bar on October 9, 1987. On October 20, 1987, the Bar sent the accused a copy of the complaint and a letter requesting a response by November 9, 1987. On November 16, 1987, a letter was sent by certified mail to the accused informing him of the consequences of his failure to respond and advising him that

the case was being referred to the LPRC. The return receipt card for the November 16, 1987, letter was signed by "Peggy Purvis." On November 25, 1987, the LPRC sent the accused a letter requesting that he respond to their inquiry. He did not respond.

On July 26, 1988, a formal complaint was filed against the accused, alleging violations of former DR 1-102(A)(4) (current DR 1-102(A)(3)); former DR 6-101(A)(3) (current DR 6-101(B)); DR 1-103(C); and ORS 9.527(4) and (6) for his conduct relating to McCallister. The accused was served with a notice to answer. The accused failed to answer, and the Trial Panel found the accused in default.

## DISPOSITIONS

*Donaldson:* We conclude from the facts that the accused, knowing his statements to be false, violated former DR 1-102(A)(4) (current DR 1-102(A)(3)) and ORS 9.527(4) when he advised Donaldson that a motion to modify his dissolution decree concerning his visitation rights had been filed, that demands had been made on Donaldson's former wife, and that he had contacted her lawyers. In addition, he violated the rule and the statute when he advised Donaldson that he had returned Donaldson's files and money through the mail, as Donaldson requested, knowing that he had not returned these items and that these statements were false.

The accused violated former DR 6-101(A)(3) (current DR 6-101(B)) when, after he was retained by Donaldson and had been paid a $100 retainer to file a dissolution decree modification concerning visitation rights, he proceeded to do absolutely nothing on the case. Further, he failed to return the money and property when requested to do so.

The accused violated DR 9-101(B)(4) when he failed to deliver promptly to Donaldson, as requested, documents, property, and funds in his possession which Donaldson was entitled to receive.

The accused violated DR 1-103(C) when he failed to respond to investigative inquiries made by the Bar's Office of Disciplinary Counsel and by the LPRC.

*Hunnell:* The accused violated former DR 1-102(A)(4) (current DR 1-102(A)(3)) and ORS 9.527(4) when

he represented to Hunnell that Hunnell's bankruptcy petition would be filed on the day he received the $65 filing fee, knowing he would not do so. He accepted the fee but did not file the petition. After Hunnell discovered that the bankruptcy petition had not been filed, he met with the accused and prepared a modified petition for the accused to file. The accused then represented to Hunnell that as soon as the client's former wife signed the modified petition, he would file it. The accused never provided the modified petition to his client's former wife for her signature, nor did he file the petition. Finally, the accused failed to return the client's filing fee and files, as requested by the client, but knowingly represented to his client that he would do so.

The accused violated former DR 6-101(A)(3) (current DR 6-101(B)) when he received from Hunnell all the necessary filing fees and supporting documents for filing a bankruptcy petition but did not file it on two occasions: first, when he failed to provide the complainant's ex-wife with copies of the requisite documents for her signature; and, second, when he failed to return the filing fee and documents to the client after the client requested that he do so.

The accused violated DR 9-101(B)(4) when he failed to deliver promptly to Hunnell, as requested, documents, property, and funds in his possession which Hunnell was entitled to receive.

The accused violated DR 1-103(C) when he failed to respond to investigative inquiries made by the Bar's Office of Disciplinary Counsel and by the LPRC.

*McCallister:* The accused violated former DR 1-102(A)(4) (current DR 1-102(A)(3)) and ORS 9.527(4) when he knowingly deceived McCallister by falsely representing that an action had been filed on her behalf and that he was awaiting a trial date, when in fact service was not completed until after the statute of limitations had expired and the case was dismissed for want of prosecution.

The accused violated former DR 6-101(A)(3) (current DR 6-101(B)) when he failed to file and perfect service of an action on behalf of McCallister in a timely fashion and, as a result, the statute of limitations expired and the case was dismissed for want of prosecution.

The accused violated DR 1-103(C) when he failed to respond to investigative inquiries made by the Bar's Office of Disciplinary Counsel and by the LPRC.

## CONCLUSION

The accused's conduct in the above matters, taken as a whole, constitutes misrepresentation, dishonesty, deceit, gross and repeated negligence, and incompetence in the practice of law in violation of ORS 9.527(4) and (6).

The accused's professional misconduct requires that he be disbarred from the practice of law in this state. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).

## APPENDIX

The following statute and disciplinary rules are involved in one or more of the complaints:

ORS 9.527(4) and (6) provide:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of wilful deceit or misconduct in the legal profession;

"* * * * *

"(6) The member is guilty of gross or repeated negligence or incompetence in the practice of law[.]"

DR 1-102(A)(3) (substantially the same as former DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

DR 6-101(B) (substantially the same as former DR 6-101(A)(3)):

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

DR 9-101(B)(4):

"A lawyer shall:

"* * * * *

"(4) Promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive. Under circumstances covered by DR 9-101(A)(2), the

undisputed portion of the funds held by the lawyer shall be disbursed to the client."